1  Shawn C. Westrick (SBN 235313)
   Email: swestrick@kswlawyers.com
2  KAWAHITO SHRAGA & WESTRICK LLP
   1990 South Bundy Drive, Suite 280
3  Los Angeles, California 90025
   Telephone: (310) 746-5300
4  Facsimile: (310) 593-2520

5  Attorneys for Plaintiff Timothy Vondersaar
   and Class Members
6
                    UNITED STATES DISTRICT COURT
7
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| 9 TIMOTHY VONDERSAAR, individually, and on behalf of other members of the general public similarly situated,<br><br>12         Plaintiffs,<br><br>13    vs.<br><br>15 STARBUCKS CORPORATION, a Washington corporation, and DOES 1-10,<br><br>         Defendants. | Case No.: CV13-80061 MISC SI<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT STARBUCKS' MOTION TO QUASH SUBPOENAS**<br><br>Date:       May 10, 2013<br>Time:       9:00 a.m.<br>Place:      Courtroom 10<br><br>Trial Date: None Set<br>Judge:      Hon. Susan Illston |

*Vondersaar v. Starbucks Corporation*    PL.'S OPP'N TO DEF.'S MOT. TO QUASH
CV13-80061 MISC SI

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................2

II. ARGUMENT .......................................................................................................3

    A. Binding Ninth Circuit Authority Supports The Production of Settlement Agreements In Situations Like The Present Case. ...........3

    B. The Cases Cited By Starbucks Do Not Support It Extraordinary Position That Settlement Discussions Are *Per Se* Non-Discoverable. ..........................................................................................7

    C. Starbucks Will Have An Opportunity To Seek To Exclude The Documents Before Judge Pregerson. ...............................................9

    D. The Subpoenas Seek Relevant Information Unavailable Through Any Other Means. ...................................................................10

    E. The Subpoenas Were Issued Properly.................................................12

    F. Starbucks' Motion Is Untimely And Should Be Denied On This Basis Alone. ....................................................................................13

III. CONCLUSION..................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**

*Bd. Of Trustees of Leland Standford Junior Univ. v. Tyco Int'l Ltd.*,
    253 F.R.D. 521 (C.D. Cal. 2008).................................................................... 4, 5

*Big Baboon Corp. v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 108027
    (C.D. Cal. Oct. 8, 2010)................................................................................. 4

*California v. Kinder Morgan Energy Partners, L.P.*, 2010 U.S. Dist.
    LEXIS 108391 (E.D. Cal. Oct. 12, 2010) ..................................................... 9

*Charles E. Hill & Assocs. v. ABT Elecs., Inc.*, 854 F. Supp. 2d 427
    (E.D. Tx. 2012) ............................................................................................. 8

*Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990) ...................... 7, 8

*EEOC v. Albion River Inn, Inc.* 2007 U.S. Dist. LEXIS 97805
    (N.D. Cal. Sep. 4 2007) ................................................................................ 8

*Elliot v. Staton*, 2012 U.S. Dist. LEXIS 86839 (D. Ore. June 22, 2012) ................. 5

*Florida Media, Inc. v. World Publications, LLC*, 236 F.R.D. 693
    (M.D. Fla. 2006) .......................................................................................... 12

*Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164
    (C.D. Cal. 1998)........................................................................................... 8

*Goodyear Tire & Rubber Company*, 332 F. 3d 976 (6th Cir. 2003) ......................... 8

*Homoki v. Rivers Edge Tree Stands*, 2012 U.S. Dist. LEXIS 179389
    (N.D. Ohio Dec. 19, 2012) ........................................................................... 5

*Implicit Networks, Inc. v. Juniper Networks, Inc.*, 2012 U.S. Dist. LEXIS
    103884 (N.D. Cal. July 23, 2012)................................................................ 6

*King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F. 2d 188 (5th Cir. 1983)............. 13

*Marek v. Chesney*, 473 U.S. 1 (1985)...................................................................... 7

*Matsushita Elec. Industrial Co. v. Mediatek, Inc.*, 2007 U.S. Dist. LEXIS
    27437 (N.D. Cal. 2007) ............................................................................... 5, 6

*Phoenix Solutions, Inc. Well Fargo Bank, N.A.*, 254 F.R.D. 568
(N.D. Cal. 2008) .................................................................................................. 4

*Pioche Mines Consolidated, Inc. v. Dolman*, 333 F. 2d 257 (9th Cir. 1965) ............... 13

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860 (Fed. Cir. 2010) ................................. 8

*Rhoades v. Avon Prods.*, 504 F. 3d 1151 (9th Cir. 2007) ....................................... *passim*

*Rivera v. Fantastic Finishes Auto Body, Inc.*, 2009 U.S. Dist. LEXIS
72772 (S.D. Fla. Aug. 4, 2009) ....................................................................... 12

*Telebrands Corp. v. Exceptional Prods.*, 2011 U.S. Dist. LEXIS
139308 (D.N.J. Dec. 5, 2011) ........................................................................... 5

*Therapeutic Research Facility v. NBTY, Inc.*, Case No. 2:05-CV-02322-GE
(E.D. Cal. 2010) ................................................................................................ 9

*U.S. Bank Nat'l Ass'n v. James*, 264 F.R.D. 17 (D. Me. 2010) .................................... 13

*United States v. Pend Oreille Pub. Utility Dist. No. 1*, 926 F. 2d 1502
(9th Cir. 1991) .................................................................................................. 4

*United States v. Portland Cement Co.*, 338 F. 2d 798 (10th Cir. 1964) ....................... 13

*United States v. Ryan*, 402 U.S. 530 (1971) ................................................................ 13

*United States v. Technic Servs., Inc.*, 314 F. 3d 1031, 1045 (9th Cir. 2002) ................. 4

*Williams v. First Nat'l Bk.*, 216 U.S. 582 (1910) .......................................................... 7

*Windsor v. Martindale*, 175 F.R.D. 665 (D. Co. 1997) ......................................... 12, 13

**Statutes**

28 C.F.R. § 36.402 (b)(1) .............................................................................................. 11

28 C.F.R. § 36.406(a) .............................................................................................. 6, 11

42 U.S.C. § 12181(9) ................................................................................................ 6, 11

42 U.S.C. § 12182(b)(2)(A)(iv) ................................................................................ 6, 11

42 U.S.C. § 12183(a)(1) ........................................................................................... 6, 11

42 U.S.C. § 12183(a)(2) .............................................................................................. 11

- iii -

**Rules**

Federal Rule of Civil Procedure 26 ............................................................................... 5, 7

Federal Rule of Civil Procedure 45 ................................................................................. 12

Federal Rule of Evidence 408 ................................................................................. *passim*

**Other Authorities**

Federal Civil Procedure Before Trial, Schwarzer, at 11:2287 (2013) ........................ 13

## I. INTRODUCTION

The gravamen of this case is straightforward—Plaintiff Timothy Vondersaar ("Plaintiff") asserts that Starbucks Corporation ("Defendant" or "Starbucks") has violated and continues to violate the Americans with Disabilities Act ("ADA") by employing beverage handoff counters above the height permitted by law. Plaintiff contends that these counters, which are used to pass hot liquids, pose a safety risk to disabled customers, who by nature of their use of wheelchairs and scooters have difficulty reaching the counters.

Plaintiff believes that the number of Starbucks stores in California that violate the ADA number in the hundreds.[1] Through independent investigation, Plaintiff learned of other disabled persons who filed individual lawsuits against Starbucks relating to the height of handoff counters at specific locations. As a result, Starbucks has lowered handoff counters, but only for those particular stores. Prior to commencing the instant action, Plaintiff sent Starbucks a letter asking it to remedy all of its non-compliant handoff counters in California. Starbucks ignored Plaintiff's reasonable request. (Declaration of Shawn C. Westrick ["Westrick Decl."], ¶ 2, Ex. A.) Starbucks has known for some time that many of its stores have handoff counters that violate the ADA. Yet, it has refused to make the wholesale changes necessary to bring all of its California stores into compliance.

Plaintiff is informed that Starbucks was aware that handoff counters at many of its stores were higher than allowed under the ADA because it has been sued on at least two previous occasions. The first in a case titled *Chapman v. Starbucks*, case number 2:09-CV-02526. In the *Chapman* matter a plaintiff alleged, *inter alia*, that the handoff counters were too high at the Starbucks location he visited. Plaintiff

---

[1] Plaintiff currently has a motion for leave to amend pending with specific allegations of Starbucks' control over its stores and adding additional Plaintiffs who visited multiple Starbucks locations that have or had counters that are non-compliant with the ADA.

- 1 -

| *Vondersaar v. Starbucks Corporation* | PL.'S OPP'N TO DEF.'S MOT. TO QUASH |
|---|---|
| CV13-80061 MISC SI | |

believes that it was only because a lawsuit was filed that Starbucks affirmatively decided to fix its non-compliant counters.[2]

The discovery sought by Plaintiff in this case involves yet another lawsuit against Starbucks regarding the heights of their counters. As conceded by Starbucks in their Motion, a potential lawsuit against Starbucks was contemplated and Starbucks and the Disability Rights Advocates ("DRA") entered into a settlement agreement. Plaintiff's subpoena to Mr. Paradis and the DRA sought documents such as any demand letter sent to Starbucks, including any enclosures, as well as the settlement agreement entered into between the parties. (Westrick Decl. at ¶ 4.) Contrary to Starbucks position, these documents are not sought in order to demonstrate Starbucks' liability. Starbucks' non-compliant counter heights are sufficient to achieve that goal. Rather, these documents are relevant for a number of other reasons. As an initial matter, they are relevant to whether Starbucks has control over the design and structural elements of its stores. Moreover, they are relevant to Starbucks' knowledge of common plans or modular designs that led to the widespread violations. Finally, they bear directly on claim that it was not feasible to fix its non-complaint counters.[3]

DRA and Paradis do not dispute the relevancy of these documents nor that there is any burden in producing them. Moreover, Starbucks itself concedes that there is no confidentiality clause in the settlement agreement. (Westrick Decl. at ¶ 5.) Instead, it simply claims that the documents will ultimately be inadmissible. As set forth above, the documents are relevant to various items divorced from Starbucks' underlying liability. To the extent that Starbucks seeks to exclude such documents, it will have ample opportunity to seek to exclude them before Judge Pregerson. However, at this stage this Court should not foreclose the ability of Judge Pregerson to consider all relevant evidence at class certification and trial.

---

[2] Plaintiff Vondersaar anticipates filing a Motion to Compel compliance with a subpoena served in connection with the *Chapman matter*.

[3] This is in fact Starbucks' Fifth Affirmative Defense.

- 2 -

## II. ARGUMENT

### A. Binding Ninth Circuit Authority Supports The Production of Settlement Agreements In Situations Like The Present Case.

Claims that settlement agreements are always protected are inconsistent with binding Ninth Circuit law. Namely, Federal Rule of Evidence 408 is, by its own explicit terms, one of limited applicability. Rule 408 is designed to "ensure that parties may make offers during settlement negotiations without fear those same offers will be used to establish liability". *Rhoades v. Avon Prods.*, 504 F. 3d 1151, 1161 (9th Cir. 2007). However, Rule 408 does not restrict disclosure when settlements are entered into evidence for reasons unrelated to liability. *Id.* Here, the evidence of a settlement agreement between DRA and Starbucks regarding the height of counters in California will demonstrate or lead to admissible evidence in a number of areas. For example, for purposes of class certification, it will show that Starbucks exercises control over all of its stores such that it can dictate how design elements are incorporated in each store. Plaintiff believes that it will also show that Starbucks made a single, uniform decision in 2005 that has impacted all stores. In addition, it will rebut Starbucks' affirmative defense that it was not feasible for it to comply with the ADA; and instead, simply made a business choice to not make wholesale changes to fix its non-compliant counters. Finally, it will show that a class action is necessary to compel Starbucks to make wholesale changes as it has a pattern and practice of only fixing its offending handoff counters when specifically sued over them. All of these items are relevant to important issues in the case and do not seek to use the settlement agreement or related documents to prove liability.

While Starbucks' Motion to Quash fails to mention the well-recognized exception to the general rule that settlement agreement are not discoverable, *Rhoads v. Avon Prods.* is illustrative of this established legal tenet. In *Rhoads*, plaintiff and Avon were in conflict over accusations that plaintiff violated Avon's trademark

- 3 -

rights. *Id.* at 1155. Settlement negotiations lasted years. *Id.* Eventually, plaintiff filed an action seeking declatory judgment that its trademark application did not infringe trademarks owned by Avon. *Id.* at 1156. Avon filed a motion to dismiss asserting the district court lacked subject matter jurisdiction and plaintiff amended his complaint including allegations that Avon threatened infringement litigation during the parties' attempt to settle the matter. *Id.* Avon objected that such allegations violated Federal Rule of Evidence 408. *Id.*

The Ninth Circuit's holding regarding Rule 408 is articulate and simple. Addressing Avon's arguments that settlement discussions are inadmissible for any purpose the Ninth Circuit accurately describes this view of the law is inaccurate. *Id.* at 1160. Rather, settlement communications are admissible so long as they are not offered to prove liability. *Id.* at 1161. Rule 408 "does *not* bar such evidence when 'offered for [other] purposes ...'". *Id.* (internal citations omitted; emphasis in original; alterations in original). In fact, this principle is well-recognized in the Ninth Circuit. *See, e.g., United States v. Technic Servs., Inc.*, 314 F. 3d 1031, 1045 (9th Cir. 2002) (holding that evidence from settlement negotiations was admissible to prove obstruction of the EPA's investigations); *United States v. Pend Oreille Pub. Utility Dist. No. 1*, 926 F. 2d 1502, 1507 n.4 (9th Cir. 1991) (holding settlement negotiations were admissible to prove disputed lands were suitable for agricultural use prior to construction of a dam). Because the plaintiff in *Rhoades* was not attempting to use the settlement discussions in order to prove whose trademark was legal, but rather to satisfy the jurisdictional requirements for declatory relief itself, the use of the settlement negotiations were proper. *Id.* In fact, this principle has been supported by the district courts in the Ninth Circuit over and over again. *See, e.g., Big Baboon Corp. v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 108027, *15-16 (C.D. Cal. Oct. 8, 2010) (citing with approval the *Rhoades* rule); *Phoenix Solutions, Inc. Well Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008); *Bd. Of Trustees of Leland Standford*

1  *Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) (holding that
2  there is no federal privilege preventing discovery of settlement agreement and related
3  documents); *Matsushita Elec. Industrial Co. v. Mediatek, Inc.*, 2007 U.S. Dist. LEXIS
4  27437, *5 (N.D. Cal. 2007) (holding that it was "clear that when Congress approved
5  Rule 408 to promote settlements, it chose to do so by limiting admissibility – and not
6  be limiting discovery"); *Elliot v. Staton*, 2012 U.S. Dist. LEXIS 86839, *5-6 (D. Ore.
7  June 22, 2012) (citing with approval the *Rhoades* rule); *see also Homoki v. Rivers
8  Edge Tree Stands*, 2012 U.S. Dist. LEXIS 179389, *6-7 (N.D. Ohio Dec. 19, 2012)
9  (holding that Rule 408 is not absolute and courts can allow admission of settlement
10 discussions); *Telebrands Corp. v. Exceptional Prods.*, 2011 U.S. Dist. LEXIS
11 139308, *10-11 (D.N.J. Dec. 5, 2011) (noting that party opposing admission of
12 settlement discussions as inappropriate under Rule 408 was "wrong").

13       Courts interpreting *Rhoades* have consistently found that the position supported
14 by Starbucks is simply a misstatement of the law. *Matsushita* demonstrates how the
15 Northern District itself has viewed the admissibility of settlement discussions during
16 the discovery process. In *Matsushita*, defendant sought the production of documents
17 regarding the negotiations of licenses and plaintiff objected insofar as the negotiations
18 of licenses were protected by the settlement privilege. *Id.* at *5-6. The court in
19 *Matsushita* first noted that Federal Rule of Civil Procedure 26 permits discovery of
20 any matter, not privileged that is relevant to a claim or defense of any party. *Id.* at *9.
21 It then noted that Federal Rule of Evidence 408 does not prohibit the disclosure of
22 negotiations. *Id.* at *10. Most importantly, the court in *Matsushita* noted that Rule
23 408 is an admissibility rule and that not only did the rule on its face allow settlement
24 discussions to be admitted for reasons other than establishing liability, but that
25 because the rule "anticipates that settlement negotiations may be admissible, a
26 privilege against their discovery would be inconsistent with Rule 26". *Id.* at *12.
27 Because Congress' explicit language in Rule 408 at most limited admissibility it did
28

- 5 -

not affect whether or not settlement negotiations were discoverable. *Id.* at *18. The Court therefore allowed the production of the negotiations. *Id.* at *20.

This Court has recognized that Rule 408 does not prohibit production of settlement related documents. In *Implicit Networks, Inc. v. Juniper Networks, Inc.*, 2012 U.S. Dist. LEXIS 103884 (N.D. Cal. July 23, 2012), this Court noted that documents related to settlement discussions were discoverable despite Rule 408. *Id.* at *2-3. This Court denied the request to produce mediation briefs pending an additional showing. *Id.* at *3-4. In this case, Plaintiff is not seeking anything other the any demand letters, draft complaints sent as enclosures to demand letters and the settlement agreement entered into between DRA and Starbucks. Starbucks concedes that there is no confidentiality clause in the settlement agreement. (Westrick Decl. at ¶ 7.)[4]

Here, and as discussed more fully below, the limited information sought by Plaintiff is relevant and likely to lead to the discovery of admissible evidence. Plaintiff does not need evidence of the settlement between DRA and Starbucks to lower a handoff counter that was allegedly too high under the ADA to establish hat Starbucks has impermissibly high counters to serve disabled customers. Quite the contrary. Starbucks' own stores will be more than sufficient proof that Starbucks has failed to comply with the ADA. The argument by Starbucks that this is the reason that Plaintiff seeks the settlement agreement is a red-herring. Rather, Plaintiff anticipates that Starbucks will argue that it was not feasible for it to comply with the requirements of the ADA and claim protection under 42 U.S.C. § 12181(9); 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12183(a)(1); and 28 C.F.R. § 36.406(a),[5] that allows companies an ability to avoid remodeling non-compliant counters. The documents sought by Plaintiff would be relevant to a number of Starbucks'

---

[4]   If there were, Plaintiff would be willing to treat the settlement agreement as confidential pursuant to the parties' Protective Order.
[5]   See Section II.D., *infra*.

- 6 -

Affirmative Defenses, including its Fifth Affirmative Defense (not readily achievable), Sixth Affirmative Defense (full compliance is structurally impracticable), Seventh Affirmative Defense (any alterations made were to ensure that the location would be readily accessible to the maximum extent feasible), Eight Affirmative Defense (any wrongful acts committed by Starbucks was because it was too costly to comply with the ADA). (Westrick Decl. at ¶ 3, Ex. B.)  The settlement agreement between DRA and Starbucks may demonstrate that Starbucks made a business decision to avoid fixing all counters in California that were non-compliant leaving their disabled customers at risk, even though Starbucks is more than capable of fixing all counters to be in compliance with the ADA and *would fix its counters only in the event that it was specifically sued over a non-complaint counter.*[6]

Because at the very least the settlement agreement will lead to other admissible evidence, the settlement agreement[7] falls plainly within the exceptions of Rule of Evidence 408 and should be produced immediately as it is relevant under Rule of Civil Procedure 26.

**B.     The Cases Cited By Starbucks Do Not Support It Extraordinary Position That Settlement Discussions Are *Per Se* Non-Discoverable.**

There is no dispute that in general the settlement privilege is meant to provide limited admissibility and in this context, Starbucks' citations do no more than state this basic principle. *See, e.g., Williams v. First Nat'l Bk.*, 216 U.S. 582 (1910); *Marek v. Chesney*, 473 U.S. 1 (1985). The other cases cited by Starbucks merely reiterate this general proposition.

However, Starbucks cites a number of cases that are at best inapposite or have

---

[6]     Additionally, the settlement agreement may provide additional information that Starbucks maintained centralized control over the design elements of its stores, a critical element for Plaintiff's motion for class certification.

[7]     Including any demand letters, draft complaints which Starbucks does not contest are discoverable.

- 7 -

been abrogated. *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990), involved a discussion of whether the assertions made in settlement discussions may be used to demonstrate liability, which as discussed throughout this Opposition is not the purpose of Plaintiff's discovery. The *Cook* court was concerned that statements made during settlement may be the product of posturing and puffing. *Id.* at 554. However, that concern is of no moment in the present case. Plaintiff is seeking the demand letter, draft complaint and finalized settlement agreement to see what affirmative action Starbucks agreed to undertake as a condition of settling the matter which may bear on Starbucks' defenses in the present action, namely that it is not unrealistic for Starbucks to fix its non-complaint counters. If Starbucks in the settlement with ADA agreed, for example, to fix the non-compliant handoff counter in that matter, it would undermine its defense that it could not do so throughout California.

*Goodyear Tire & Rubber Company*, 332 F. 3d 976 (6th Cir. 2003), cited by Starbucks was abrogated by *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860 (Fed. Cir. 2010) and courts acknowledge that at the very least, there has been "some shift away from *Goodyear's* bright-line rule and toward the discoverability of settlement negotiations". *Charles E. Hill & Assocs. v. ABT Elecs., Inc.*, 854 F. Supp. 2d 427, 428-29 (E.D. Tx. 2012) (collecting cases that rejected the rigid *Goodyear* rule).[8] *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164 (C.D. Cal. 1998) is also interesting because *Folb* specifically notes that Rule 408 only addresses admissibility to the trier of fact. *Id.* at 1171. Ultimately, the decision reached in *Folb* only at best applies to formal mediations. This court in fact has rejected a broad reading of *Folb* on this ground and ordered discovery of settlement discussions. *EEOC v. Albion River Inn, Inc.* 2007 U.S. Dist. LEXIS 97805, *4 (N.D. Cal. Sep. 4

---

[8] Additionally, even to the extent the *Goodyear* rule survives in any manner, it is not binding authority on this Court as *Rhoades* is.

- 8 -

2007).

In *Therapeutic Research Facility v. NBTY, Inc.*, Case No. 2:05-CV-02322-GE (E.D. Cal. 2010), the defendant sought documents related to contemplated lawsuits or filed lawsuits in a copyright action. (Docket No. 71, p. 2.) However, the defendant's request for these documents was based on a litany of vague allegations to which there was a total absence of need. (Docket No. 71, p. 3.) Thus, in the absence of a reason to produce settlement-related documents, the court denied the requested documents. In this case, and consistent with the Ninth Circuit's binding authority in *Rhoades*, Plaintiff has demonstrated why these documents are necessary.[9]

As demonstrated above, the cases below are easily distinguishable from the facts in the present case. Either the documents sought were not demonstrated to fall into the exception established by *Rhoades* or the cases cited by Starbucks were specifically abrogated on a misreading of Rule 408. Starbucks cannot hide behind Rule 408 to avoid the production of the settlement agreement because this document is relevant to demonstrate that Starbucks' proffered Affirmative Defenses lack merit and, as discussed below, there is no other means for Plaintiff to secure these documents.

### C. Starbucks Will Have An Opportunity To Seek To Exclude The Documents Before Judge Pregerson.

DRA, Larry Paradis, and Starbucks all admit that there is no burden associated with producing the requested documents. (Westrick Decl. at ¶ 6.) Rather, Starbucks' only stated basis for seeking to quash the subpoena is that the documents are not relevant since they will ultimately be deemed inadmissible. Essentially, Starbucks

---

[9] In *California v. Kinder Morgan Energy Partners, L.P.*, 2010 U.S. Dist. LEXIS 108391 (E.D. Cal. Oct. 12, 2010), the parties dispute over whether documents should be produced were not even briefed by the parties, leaving the court to discuss the issue without the benefit of any briefing. *Id.* at *10-11. The court concluded that some documents were subject to production while others were not. *Id.* at *11-12.

- 9 -

asks this Court to make a determination that the documents sought are not relevant, and cannot lead to the admissibility of any relevant advance, outside the context of the manner in which they will be used at class certification or trial. Indeed, Starbucks does not dispute that Judge Pregerson will ultimately be called upon to make exactly that determination, but with a full record before him. Therefore, because the documents are not onerous to produce, confidential or privileged, there is no prejudice in allowing Judge Pregerson to determine their admissibility.

As set forth throughout this Opposition, Plaintiff has articulated numerous reasons why the settlement agreement and associated documents are not only relevant, but also admissible with respect to both class certification and trial. These are reasons are completely divorced from using the settlement agreement and associated documents for purposes of establishing liability. Moreover, the settlement agreement and related documents could lead to the discovery of other relevant evidence.

Even setting aside the foregoing, the decision as to whether to exclude evidence on the basis of FRCP 408 should be left to Judge Pregerson. Starbucks does not dispute that it will have ample opportunity to present any arguments it deems fit as to Judge Pregerson should not consider any documents produced in response to the subpoena at class certification or trial. Indeed, because Judge Pregerson will be presiding over class certification and the trial, he will be in best position to assess the admissibility of the documents sought by the subpoena by reviewing the context and purpose for which the evidence is submitted.

**D.    The Subpoenas Seek Relevant Information Unavailable Through Any Other Means.**

The ADA imposes a 3-tier system regarding how much compliance with the DOJ Standards are required by public establishments. In buildings built before January 26, 1993, that have not been altered, barriers must be removed where it is

1  "readily achievable" to do so. The removal of barriers is "readily achievable" when it
2  is "easily accomplishable and able to be carried out without much difficulty or
3  expense". 42 U.S.C. § 12181(9) and 42 U.S.C. § 12182(b)(2)(A)(iv). Factors to
4  consider include the costs of the project, the resources of the facility and entity, and
5  the nature of the entity and its operations. *Id.*

6  In buildings built for first occupancy after January 26, 1993, the ADA requires
7  that they be "readily accessible to and usable by individuals with disabilities" 42
8  U.S.C. § 12183(a)(1). To satisfy the "readily and accessible to and usable by"
9  standard, new construction and alterations are required to comply with the DOJ
10 Standards. 28 C.F.R. § 36.406(a).

11 The third category covers buildings that existed before January 26, 1992, but
12 were altered after that date. Alterations are defined as: "Alterations include, but are
13 not limited to, remodeling, renovation, rehabilitation, reconstruction, historic
14 restoration, changes or rearrangement in structural parts or elements, and changes or
15 rearrangement in the plan configuration of walls and full-height partitions. Normal
16 maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to
17 mechanical and electrical systems are not alterations unless they affect the usability of
18 the building or facility". 28 C.F.R. § 36.402 (b)(1). Alterations in existing facilities
19 are required to meet the new constructions standard to the maximum extent feasible.
20 42 U.S.C. § 12183(a)(2). In order to meet this standard, alterations must comply with
21 the ADA. 28 C.F.R. § 36.406(a).

22 Starbucks' Answer includes each of these three sections to excuse its alleged
23 violations of the ADA. The fact that Starbucks has on other occasions fixed counters
24 when specifically sued over them demonstrates that these defenses are meritless.
25 Demonstrating that Starbucks has been confronted in other litigation with allegations
26 that its counters are too high under the ADA and that Starbucks chose to lower the
27 handoff counters in those locations undermines Starbucks' defenses. The requested
28

- 11 -

1 discovery is relevant and cannot be obtained through any other means. Starbucks'
2 willingness to concede it is aware that it has had non-compliant counters for years is
3 nothing more than a red-herring. The requested discovery is not necessary to
4 demonstrate that Starbucks has known for years that it has non-compliant counters.
5 Rather, the evidence will demonstrate that Starbucks adopted a pattern and practice
6 spanning years of only addressing its non-compliant handoff counters when
7 specifically sued over them. This undercuts any arguments that compliance with the
8 ADA was not readily achievable or readily accessible.

### E. The Subpoenas Were Issued Properly.

Federal Rule of Civil Procedure 45 does not state how much time must be allowed between service of a subpoena and the date set for compliance. Service of subpoenas at least 10 days before the production is customary, but not mandatory. In fact, the provisions of Rule 45 contemplate that less than 14-day service may be proper. Fed. R. Civ. P. 45(c)(2)(B). While notice to all parties is required, all that is required is sufficient time to comply so that they can object or obtain concurrent access to documents provided by the subpoenaed person. Fed. R. Civ. P. 45(b)(1).

Here, the subpoenas were served on DRA and Mr. Paradis on January 15, 2013. The date for compliance was February 1, 2013. Starbucks was served with the subpoenas on January 17, 2013. Pursuant to Rule 45, this was more than sufficient time to produce the settlement agreement. Consistent with Fed. R. Civ. P. 45(b)(1) Starbucks was provided with sufficient time in which to make a timely motion to quash. Additionally, as discussed below, Starbucks has no standing to make this argument, as a motion to quash only lies in relation to its claim of privilege. *See Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Co. 1997).[10]

---

[10]   *Florida Media, Inc. v. World Publications, LLC*, 236 F.R.D. 693 (M.D. Fla. 2006) is distinguishable as counsel was never served with the subpoena and the attorney who served the subpoenas refused to do so. *Id.* at 694. *Rivera v. Fantastic Finishes Auto Body, Inc.*, 2009 U.S. Dist. LEXIS 72772 (S.D. Fla. Aug. 4, 2009) fails

- 12 -

### F. Starbucks' Motion Is Untimely And Should Be Denied On This Basis Alone.

The only way to contest a subpoena's validity is to refuse to comply and challenge the subpoena if cited for contempt. Otherwise the subpoenaed persons must obey it unless and until the subpoena is quashed. *United States v. Ryan*, 402 U.S. 530, 532 (1971). A third party is only allowed to quash a subpoena when a claim that privileged documents is sought. *Windsor*, 175 F.R.D. at 668; *U.S. Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 18-19 (D. Me. 2010). Motions to quash or for a protective order is the only way for a party claiming privilege to prevent disclosure when a subpoenaed witness is otherwise willing to produce the records. Federal Civil Procedure Before Trial, Schwarzer, at 11:2287 (2013).

Any such motion must be made promptly because it must be heard and granted before compliance is required. *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F. 2d 257, 269 (9th Cir. 1965) (under earlier version of rules, motions to quash must be filed and acted upon before time of compliance to avoid sanctions); *King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F. 2d 188, 191 (5th Cir. 1983); *see also United States v. Portland Cement Co.*, 338 F. 2d 798, 803 (10th Cir. 1964) (under earlier version of the rules, order conditioning discovery must be obtained, if at all, *before* discovery takes place).

Here, the subpoena was served on Starbucks on January 17, 2013 with a compliance date of February 1, 2013. In order to have filed a proper motion to quash, Starbucks was required to seek and receive an order from this Court before the date of compliance. By failing to do so, their motion to quash is untimely and should be rejected on this basis alone.

\\\

---

to indicate on what basis a party claimed it was not provided notice. However, the court's citation to *Florida Media* suggests that the subpoenaing party failed to give any notice at all. *Id.* at *4-5.

- 13 -

## III. CONCLUSION

It is not surprising that Starbucks is trying unproductively to obstruct Plaintiff's access to discoverable information. Starbucks knows that many of its stores in California violate the ADA, and consequently California law as well. Starbucks most likely made a simple business decision to only fix the counter heights at stores in the event they were sued specifically over it. The other stores, and the disabled customers they serve every day, were expected to merely accept dangerously high counters until such time in the future that Starbucks got around to fixing the counter heights to comply with the ADA. The discovery sought by Plaintiff seeks information regarding the settlement agreement entered into between Starbucks and the DRA. This information is not sought in order to demonstrate Starbucks' liability. Starbucks' non-compliant counter heights are sufficient to achieve that goal. Rather, Starbucks is likely to argue that that under the ADA it was not feasible to fix its non-complaint counters. The settlement agreement between Starbucks and ADA may lead to admissible evidence that demonstrates that this defense is a lark and that one of the biggest companies in the world was more than capable of meeting its obligations under the ADA. Plaintiff respectfully requests this Court find that Plaintiff's subpoena is proper and order compliance with it within 10 days of the Court's Order.

Dated: April 10, 2013

By:/s/ Shawn Westrick
Shawn Westrick
KAWAHITO SHRAGA & WESTRICK LLP
Attorneys for Plaintiff/Class Members